1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Damarin Pthlong,<br><br>    Plaintiff,<br><br> v.<br><br>Commissioner of Social Security,<br><br>    Defendant. | No. 1:22-cv-1558-DC-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO DIRECT JUDGMENT FOR DEFENDANT**<br><br>**(Doc. 15, 18, 21)** |

### I.  Introduction

Damarin Pthlong seeks judicial review of the Commissioner's decision denying supplemental security income (SSI) under Title XVI of the Social Security Act.[1]

### II.  Factual and Procedural Background

Plaintiff applied for SSI on April 15, 2020.  The Commissioner denied the application initially and on reconsideration.  AR 97, 106.  Plaintiff appeared for a hearing before an ALJ on August 17, 2021.  AR 57–90.  The ALJ issued an unfavorable decision on September 23, 2021.  AR 18–31.  The Appeals Council denied review on August 15, 2022, and this appeal followed.

### III.  The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge.  Docs. 9, 12.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

1
2
3
4
5
6
7
8
9
10
11
12

### IV.   The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity from the application date of April 15, 2020.  AR 23.  At step two the ALJ found that Plaintiff had <u>no</u> severe impairment and the following non-severe impairments: diabetes mellitus; benign prostatic hyperplasia; obesity; hypertension; chalazion left lower eyelid; hordeolum externum of the left eye; and, degenerative disc disease of the cervical spine.  AR 23–26.  The ALJ concluded the claimant did not have an impairment or combination of impairments that significantly limited, or was expected to significantly limit, the ability to perform basic work-related activities for 12 consecutive months. The ALJ then concluded that the claimant did not have a severe impairment or combination of impairments pursuant to 20 CFR 416.921 et seq, and accordingly found that Plaintiff was not disabled since the application date of April 15, 2020.  AR 26.

### V.   Issue Presented

13
14
15
16
17

Plaintiff asserts two claims of error: **1-** "The ALJ's RFC determination is not supported by substantial evidence because he failed in his duty to complete the record and obtain an opinion of Plaintiff's RFC from an examining physician," and **2- "**The ALJ's decision is unsupported by substantial evidence as she failed to find Plaintiff's impairments severe at Step 2 and did not continue on to the next steps of the sequential evaluation**."**   MSJ at 5–9 (Doc. 18).

18
19

Both claims challenge the step-two non-severity finding and thus will be addressed together below.

20
21
22

#### A.   Development of the Record; Non-Severy Finding

##### 1.   Applicable Law

23
24
25
26
27
28

"The ALJ has a duty to develop the record … even when the claimant is represented by counsel." *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).  The duty is triggered where the evidence is ambiguous or inadequate for adjudication. *Id.*  "A specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy."). *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (as amended).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

At step two, the ALJ must determine if the claimant has a medically severe impairment or combination thereof. "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include: **1**- physical functions such as walking, standing, sitting, lifting, and carrying; **2**- capacities for seeing, hearing, and speaking; **3**- understanding, carrying out, and remembering simple instructions; **4**- use of judgment; **5**- responding appropriately to supervision, co-workers, and usual work situations; and **6**- dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

Despite the meaning of the word "severe" in common parlance, the step-two severity threshold is not high. "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." Smolen, 80 F.3d at 1290. "Step two, then, is a de minimis screening device [used] to dispose of groundless claims[.]" Smolen, 80 F.3d at 1290.

### 2.    Analysis

After setting forth the applicable law, Plaintiff's first argument begins at the bottom of page 6 and concludes at the bottom of page 7. Plaintiff's argument can be distilled to the following contentions: **1**- the record contained no opinion from an examining source; **2**- the only medical opinions in the record from the non-examining agency consultants predated Plaintiff's cervical spine x-ray and thus they had no records concerning his cervical impairment; and **3**- the ALJ should have ordered an updated, and/or examining opinion, rather than interpreting the records herself which the ALJ as a layperson is unqualified to do.

1

2

### a.    ALJ's are not Barred from Independently Reviewing Medical Evidence and Translating it into Functional Terms

3

4

There is often a significant gap in time between the agency's review at the

5

initial/reconsideration determination levels and the time of the ALJ hearing.  Claimants routinely

6

continue pursuing medical care during that time and generating new medical records.  *Meadows v.*

7

*Saul*, 807 F. App'x 643, 647 (9th Cir. 2020) (noting there "is always some time lapse between a

8

consultant's report and the ALJ hearing and decision, and the Social Security regulations impose

9

no limit on such a gap in time.").    Thus, ALJs are nearly always tasked with independently

10

reviewing some medical evidence that was never considered by a medical expert and forming

11

conclusions about the functional significance of that evidence.  That is consistent with the ALJ's

12

role as characterized by the Ninth Circuit.  *See  Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996,

13

1006 (9th Cir. 2015) (the ALJ is responsible for translating and incorporating clinical findings into

14

functional terms).

15

16

Plaintiff quotes a district court opinion in *Howell* stating that, "Barring a few exceptions, an

17

ALJ must have a doctor's opinion of a claimant's functional capacity in order for there to be

18

substantial evidence."  Br. at 5-6 (quoting *Howell v. Kijakazi*, No. 20-CV-2517-BLM, 2022 WL

19

2759090, at \*7 (S.D. Cal. July 14, 2022)).   The original cited source was the First Circuit's

20

statement in *Manso-Pizarro* that, "With exceptions, ... an ALJ, as a layperson, is not qualified to

21

*interpret raw data* in a medical record.").  *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76

22

F.3d 15, 17 (1st Cir. 1996) (emphasis added).

23

24

Importantly though, the phrase "raw medical data" is not synonymous with "all medical

25

records."   The phrase has often been used to describe instances where an ALJ independently

26

interprets laboratory findings or medical imaging and then translates it into functional terms.  *See,*

27

*e.g.*, *Vasquez v. Berryhill*, No. 1:16-CV-00448-GSA, 2017 WL 2633413, at \*6 (E.D. Cal. June 19,

28

1
2
2017) ("the ALJ interpreted the CT scan and came to a medical conclusion regarding its meaning").

3
Here, by contrast, there is no contention that the ALJ attempted to interpret medical imaging itself,

4
or even the radiologist's report of the imaging (as discussed more below).

5
Plaintiff cites other supposedly controlling authority, the inapplicability of which is readily

6
apparent from Plaintiff's explanatory parenthetical. *See* MSJ at 6, *citing Day v. Weinberger*, 522

7
F.2d 1154, 1156 (9th Cir. 1996) (the ALJ was not qualified as a medical expert and therefore could

8
not permissibly *go outside the record to consult medical textbooks* for purpose of making his own

9
assessment of the claimant's physical condition) (emphasis added).  Here however, there is no

10
contention that the ALJ consulted medical textbooks or otherwise went outside the record.

11
Plaintiff's argument rests on the mistaken assertion that an examining source opinion is essentially

12
always required, which is not the case.  And nor does Plaintiff explain why such an opinion was

13
particularly necessary here.

14

15
16
                    **b.      No "Updated" Opinion Was Necessarily To Consider the**
                             **Cervical Spine Impairment**

17
Plaintiff further emphasizes that he did not undergo the x-ray of his cervical spine revealing

18
degenerative changes until October 23, 2020 (AR 550) which was after the date that the state agency

19
medical consultants reviewed the record. AR 97, 106.  As such, Plaintiff contends that "the only

20
opining medical sources contained within the record had none of the objective medical evidence

21
regarding Plaintiff's cervical impairment."  MSJ at 7 (emphasis added).  However, this is not

22
accurate given Dr. Ruo's reconsideration finding dated August 26, 2020 as Dr. Ruo considered a

23
July 2020 physical exam for neck pain (AR 99–101) which noted a new onset of neck pain 3-7 days

24
earlier associated with no injury, moderate intensity, and documented tenderness, pain and spasm.

25
26
AR 422-23.  Dr. Ruo opined Plaintiff had no severe cervical impairment.

27
Plaintiff also discusses the following additional records of PA Phan which were not

28
reviewed by a medical consultant.  Plaintiff points out that he returned to PA Phan on October 15,

2020 for his neck pain.  AR 527.  An examination at this visit revealed that Plaintiff had tenderness, bony tenderness, and pain in the cervical spine.  AR 528.  PA Phan then referred Plaintiff to undergo an x-ray of his cervical spine. Ar. 5282.  Plaintiff underwent the x-ray on October 23, 2020 which showed narrowing of the C5-C6 disc space and posterior longitudinal ligament calcification identified at C2-C4.  AR 550.  However, the radiologist did not specify the severity of the pathology.  Plaintiff neglects to acknowledge that range of motion in his cervical spine was normal at the October 2020 follow up with no muscle spasm.  AR 528.  This is in keeping with the ALJ's description that Plaintiff's cervical spine exams were within normal limits.  AR 26.  The exams did reflect pain and tenderness, as the ALJ acknowledged.  *Id.*  As to the severity of the pain, the ALJ noted that he received no injections, physical therapy, or surgery.  *Id.*  Further, as to his pain severity more generally, the ALJ noted he declined pain medications and only used ibuprofen.  *Id.*

In sum, these exam findings required no medical expertise to decipher, and this evidence substantially supports the ALJ's conclusion that the cervical spine impairment did not significantly impact work related functioning and was therefore non-severe.

As to the additional discussion under Plaintiff's second argument header, the analysis spans two paragraphs.  Plaintiff again critiques the ALJ's reliance on "outdated" opinion evidence and benign findings to support the conclusion that his impairments were non-severe.  Plaintiff explains:

> As set forth above, Plaintiff's medical records contained numerous positive findings, including cervical spine tenderness and pain; abdominal pain and distention; and reduced lumbar and hip range of motion. Supra. Additionally, Plaintiff consistently reported to his providers that his conditions were made worse with prolonged sitting or standing. See Ar. 326-27. The ALJ is not permitted to simply pick and choose select evidence in order to garner support for an otherwise contradicted RFC . . . Yet that is precisely what the ALJ did here, ignoring all positive findings or downplaying their severity in order to mistakenly determine that Plaintiff's conditions did not even meet the de minimis standard required to be found a severe impairment at Step 2. This is harmful error and remand is required.

Plaintiff's generalization that the ALJ "ignored all positive findings or downplay[ed] their significance" is not accurate or responsive.  The ALJ covered the positive and negative findings

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

with comprehensiveness and detail, along with an effort to reconcile the two, including: **1-** an October 28, 2019 visit with Dr. Lee complaining of bilateral thigh/prostate/inguinal pain partially alleviated by ibuprofen, with pain reproduced by postural movements and exacerbated with extended sitting and standing but otherwise unremarkable with negative straight leg raise test (AR 25, citing AR 326–27); **2-** a December 2019 ER visit with near syncopal episode and chronic left flank pain with some left sided abdominal tenderness and mild distension but otherwise unremarkable exam findings, computerized tomography negative for any acute intraabdominal or pelvic abnormality, electrocardiogram was normal, diagnosed with constipation but no etiology identified for the near syncopal episode  (AR 25, citing AR 361–67); **3-** a March 13, 2020 prostate biopsy showing no evidence of malignancy and follow up visits confirmed no evidence of cancer and no changes in urination (AR 25, citing AR 381, 384–85); **4-** an August 2020 initial physical therapy visit for bilateral inguinal pain where imaging was normal but for excess fat deposits of the inner thighs, though he demonstrated reduced range of motion of the hips and lumbar spine (AR 25, citing AR 432); **5-**  a June 9, 2020 visit for complaints of right forearm pain while sleeping or typing, physical exam was within norma limits (AR 25, citing AR 400, 407); **6-** with respect to diabetes mellitus type II, blood glucose levels were either normal or  mildly elevated throughout the record (AR 25, citing AR 338, 362, 391); **7-** The record did not show any evidence of diabetic complications such as retinopathy, neuropathy, fatigue, or cardiac or renal disorders (AR 25, citing AR 411); **8-** a July 17, 2020, groin ultrasound showing no acute findings, and no lipomas bilaterally; and **9-** X-rays of the cervical spine taken on October 23, 2020 which did show degenerative changes (Exhibit 14F), though radiology reports of the right hand on August 2, 2021 showed intact right hand with no discrete osseous or soft tissue abnormalities (Exhibit 17F).

Finally, the ALJ bridged the analytical gap between the factual summary and conclusion, explaining as follows:

1

2    The conclusion that the claimant does not have an impairment or combination of
     impairments that significantly limits his or her ability to perform basic work
3    activities is consistent with the objective medical evidence and other evidence.  The
     record shows that the claimant's biggest concern was the pain in his left side,
4    sometimes described as groin pain, other times, abdominal or flank pain; however,
     all imaging was unremarkable, physical examinations were unremarkable, and there
5    was never an actual diagnosis for this.  The scans showed only fatty deposits, with
     no lipomas in that area.  He declined medications, and reported that he only uses
6    Ibuprofen, which works best for him. In regards to his diabetes, his blood glucose
     levels remained within normal limits, and he had no end organ damage from his
7    diabetes.  X-rays did show degenerative disc disease in his cervical spine; however,
     he has not had any injections, physical therapy, or surgery for this, and physical
8    examinations were within normal limits.  The claimant was obese; however, he
     testified that he gained some weight because of COVID and staying inside and not
9    exercising.  There is nothing to show that he would be limited because of his weight.
10   AR 26.

11       The ALJ's factual summary and pin citations for the most part appear accurate and

12   complete.  Further, the ALJ's effort to bridge the analytical gap demonstrated a reasoned conclusion

13   about what the objective evidence showed on balance, and why it fell short of even the de-minis

14   step two severity threshold.  Plaintiff's generalization that the ALJ either "ignored or downplayed"

15   all positive medical findings is largely unsupported as discussed above.   Thus, Plaintiff establishes

16   no error as to the ALJ's non-severity finding at step two.

17

18       **VI.    Recommendations**

19       For the reasons stated above, substantial evidence and applicable law support the ALJ's

20   conclusion that Plaintiff was not disabled.  Accordingly, the recommendation is as follows:

21       1.      That Plaintiff's motion for summary judgment (Doc. 18) be **DENIED.**

22       2.      That Defendant's cross-motion (Doc. 21) be **GRANTED.**

23       3.      That the decision of the Commissioner of Social Security be **AFFIRMED**.

24       4.      That the Court Clerk of Court be directed to enter judgment in favor of Defendant

25           Commissioner of Social Security and against Plaintiff Damarin Pthlong.

26

27       **VII.   Objections Due Within 14 Days**

28       These Findings and Recommendations will be submitted to the United States District Judge

9

assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

    Dated:  **January 29, 2025**                  **/s/ Gary S. Austin**
                                                  UNITED STATES MAGISTRATE JUDGE